Filed 7/9/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ANDRES SANCHEZ et al., | B245050 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. LC091995) |
| v. | |
| HITACHI KOKI, CO., LTD., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Frank J. Johnson, Judge. Affirmed.

Brown, Brown & Brown and David S. Brown for Plaintiffs and Appellants.

Youngerman & McNutt, Thomas B. McNutt, Robert L. Panza; and Ronald P. Kaplan for Defendants and Respondents.

_____

## INTRODUCTION

Andres Sanchez, and his wife, Blanca Perez, appeal from a judgment following an order granting summary judgment in favor of respondents Hitachi Koki, Co., Ltd. and Hitachi Koki U.S.A., Ltd. Appellants contend the superior court erred in determining that respondents, who manufactured a grinder, were not liable for personal injuries resulting from Sanchez's use of the grinder with a saw blade manufactured by a third party. We conclude the California Supreme Court's recent decision in *O'Neil v. Crane Co.* (2012) 53 Cal.4th 335 (*O'Neil*) resolves the instant matter in favor of respondents. Accordingly, we affirm.

## STATEMENT OF THE FACTS

At the time of the underlying accident, Sanchez drove and maintained trucks for his employer. On September 16, 2009, Sanchez was attempting to cut a tire to make a motor mount to fix one of his employer's trucks. Sanchez initially attempted to cut the tire using his own four-inch grinder, but the grinder became stuck in the rubber of the tire. Sanchez then went to a Roadside Lumber & Hardware store to purchase a bigger grinder. At the hardware store, he purchased a Hitachi grinder and a Razor Back tooth saw blade. The safety instructions and instruction manual for the Hitachi grinder expressly warned that saw blades should never be used with the grinder.[1] After returning to his workplace, Sanchez placed the saw blade on the spindle of the grinder, and attempted to cut the tire. When the

---

[1]    The written materials contained the following warnings in boldface type: "WARNING: To avoid the risk of serious injury, NEVER use this grinder with cup wheels and/or saw blades." "WARNING: Never use any accessories other than those mentioned below. The use of any accessories other than those mentioned below or attachments not intended for use such as cup wheel, cut-off wheel, or saw blade is dangerous and may cause personal injury or property damage."

saw blade came into contact with the tire, Sanchez lost control of the grinder, and the saw blade cut Sanchez's left hand.

## STATEMENT OF THE CASE

On December 2, 2010, appellants filed a personal injury form complaint against defendants Roadside Lumber & Hardware, Inc., Ace Hardware Corporation, and Does 1 to 100. The complaint alleged causes of action for product liability and general negligence. In the complaint, appellants alleged that Sanchez injured his left hand while using a Hitachi grinder in combination with a Razor Back tooth saw blade.[2] Appellants alleged that defendants "recommended, selected, and sold" the products to be used together, and that "[u]sing a saw blade on a grinder is unsafe, because the saw blade is not guarded on a grinder, as opposed to a saw." In July 2011, the complaint was amended to add respondents.[3]

Respondents filed separate answers, generally denying the allegations. Respondents also alleged, as affirmative defenses, product misuse and product modification. On June 14, 2012, respondents filed a motion for summary judgment. Citing *O'Neil*, respondents asserted that they were not liable on either cause of action. In *O'Neil*, the Supreme Court had held that "a product manufacturer may not be held liable in strict liability or negligence for harm caused by another manufacturer's product unless the defendant's own product contributed substantially to the harm, or the defendant participated substantially in creating a harmful combined use of the products." (*O'Neil, supra,* 53 Cal.4th at

---

[2]    Perez alleged a loss of consortium. As Perez's claim is derivative of Sanchez's claim for personal injury to his hand, we do not address it separately.

[3]    By the time of the summary judgment motion, appellants had apparently modified their theory of the case to assert that the grinder was dangerous because it lacked a kickback prevention feature. See footnote 4, *infra*.

3

p. 342.)  Respondents asserted that the saw blade was not manufactured by Hitachi, that the grinder did not require the use of the saw blade, and that appellants' own expert conceded that the grinder was not intended to be used with a saw blade. After noting there were two separate written warnings advising consumers never to use a saw blade with the grinder, respondents argued they had no duty to warn Sanchez about not using a saw blade with the grinder or to provide kickback prevention for a product not intended to be used with the grinder.[4]  Finally, respondents contended they were not liable for any representations made by employees of the hardware store about the use of a saw blade with a grinder.

Appellants opposed the summary judgment motion, contending that *O'Neil* was distinguishable, because in the instant case, Hitachi's grinder itself was defective.  Appellants argued the grinder was defective because (1) it lacked kickback prevention, (2) it was made so that the most common circular saw blade would fit it, and (3) there was no applicable warning on the grinder itself.

In their reply, respondents argued (1) the lack of kickback prevention was not a legal cause of the accident, as a saw blade was never intended to be used with the grinder, (2) the fact that common saw blades could be used with the grinder was legally irrelevant, as *O'Neil* had held that "mere compatibility" is not enough to render a product defective (*O'Neil*, *supra*, 53 Cal.4th at p. 350), and (3) the

---

[4]     As explained by appellant's expert, "[k]ickback of angle grinders occurs when the grinding wheel or blade interacts with the article being worked on, causing the wheel or blade to greatly slow or abruptly stop, and the machine to fly. Kickback prevention technology stops the wheel or blade within a fraction of a second of its binding, thus preventing kickback."  The expert opined that Sanchez's injury resulted from the kickback of the Hitachi grinder, and that kickback prevention would have averted the accident.

4

adequacy of the warnings was legally irrelevant, as respondents had no duty to warn.

On September 10, 2012, the superior court granted the motion for summary judgment. In its written order, the court found as a matter of law, "that use of a saw blade with the Hitachi Grinder is not the inevitable use of the grinder, nor even an intended use of the grinder, pursuant to *O'Neil v. Crane Co*. (2012) 53 Cal.4th 335, and therefore, pursuant to the component parts doctrine, Defendants HITACHI: had no duty to design the grinder in such a way as to prevent use of their grinder with a saw blade; had no duty to provide kickback prevention; and had no duty to warn regarding the dangerous use of the grinder with a saw blade." After judgment was entered, appellants timely appealed.

## DISCUSSION

Appellants contend the trial court erred in granting summary judgment. For the reasons explained below, we disagree.

A.      Standard of Review

"A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. [Citation.]" (*Molko v. Holy Spirit Assn*. (1988) 46 Cal.3d 1092, 1107.) Generally, "the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850.) In moving for summary judgment, "all that the defendant need do is to show that the plaintiff cannot establish at least one

5

element of the cause of action—for example, that the plaintiff cannot prove element *X*." (*Id*. at p. 853.)

"'Review of a summary judgment motion by an appellate court involves application of the same three-step process required of the trial court. [Citation.]'" (*Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1662.) The three steps are (1) identifying the issues framed by the complaint, (2) determining whether the moving party has made an adequate showing that negates the opponent's claim, and (3) determining whether the opposing party has raised a triable issue of fact. (*Ibid*.)

"Although we independently review the grant of summary judgment [citation], our inquiry is subject to two constraints. First, we assess the propriety of summary judgment in light of the contentions raised in [appellant's] opening brief. [Citation.] Second, to determine whether there is a triable issue, we review the evidence submitted in connection with summary judgment, with the exception of evidence to which objections have been appropriately sustained. [Citations.]" (*Food Safety Net Services v. Eco Safe Systems USA, Inc*. (2012) 209 Cal.App.4th 1118, 1124.)

B.     Analysis

In their complaint, appellants asserted causes of action for product liability and negligence against respondents for personal injuries to Sanchez arising from his use of a Hitachi grinder with a Razor Back saw blade. In their motion for summary judgment, respondents presented a prima facie case that they were not liable "in strict liability or negligence" for Sanchez's injuries because the injuries were caused by a saw blade manufactured by a third party. (*O'Neil*, *supra*, 53 Cal.4th at p. 342.) Appellants contend, however, that there are triable issues of material fact as to whether respondents fall within the purview of *O'Neil*.

6

In *O'Neil*, the Supreme Court addressed "[w]hen . . . a product manufacturer [is] liable for injuries caused by adjacent products or replacement parts that were made by others and used in conjunction with the defendant's product." The court held that "a product manufacturer may not be held liable in strict liability or negligence for harm caused by another manufacturer's product unless the defendant's own product contributed substantially to the harm, or the defendant participated substantially in creating a harmful combined use of the products." (*O'Neil*, *supra*, 53 Cal.4th at p. 342.)

*O'Neil* was a personal injury lawsuit involving a plaintiff who developed mesothelioma, a fatal lung cancer, as a result of his exposure to asbestos-containing dust. (*O'Neil*, *supra*, 53 Cal.4th at p. 346.) The defendants were manufacturers of valves and pumps used in the steam propulsion systems of naval warships. The Navy had required the defendants to use asbestos-containing materials to insulate the valves and pumps. Although the defendants complied with the Navy specifications, they did not manufacture any asbestos-containing insulation. Nor was there evidence that asbestos-containing insulation was needed for the valves and pumps to function properly. (*Id*. at pp. 343-344.) Moreover, the original insulation had been replaced with other asbestos-containing insulation by the time the plaintiff, a naval seaman, encountered it during his work on the valves and pumps. (*Id*. at p. 345-346.) On this factual record, the court concluded that the defendants were not strictly liable for the plaintiff's injuries because "(a) any design defect in *defendants' products* was not a legal cause of injury to [plaintiff], and (b) defendants had no duty to warn of risks arising from *other manufacturers'* products." (*Id*. at p. 348.)

In reaching its decision, the court noted that "no evidence showed that the design of defendants' products required the use of asbestos components, and their

7

mere compatibility for use with such components is not enough to render them defective." (*O'Neil*, *supra*, 53 Cal.4th at p. 350.) It recognized, however, that if a product manufacturer specifically designed its product for a use that resulted in harm, the manufacturer would be liable for the injury. (*Id*. at p. 359.) As an example, it cited *DeLeon v. Commercial Manufacturing & Supply Co*. (1983) 148 Cal.App.3d 336, 340 (*DeLeon*), in which the plaintiff was injured while cleaning a shaker bin designed to be located near a rotating line shaft. Acknowledging that the plaintiff's injury "resulted not from any intrinsic defect in the bin or the line shaft, but in the dangerous proximity of these two products," the court held the bin manufacturer could nevertheless be liable, as it "contributed to this dangerous condition because it designed the bin specifically for use in the particular site where it was located." (*O'Neil*, *supra*, 53 Cal.4th at p. 359.)

*O'Neil* further recognized that "California law does not impose a duty to warn about dangers arising entirely from another manufacturer's product, even if it is foreseeable that the products will be used together." (*O'Neil*, *supra*, 53 Cal.4th at p. 361.) The court noted that "[a] contrary rule would require manufacturers to investigate the potential risks of all other products and replacement parts that might foreseeably be used with their own product and warn about all of these risks. . . . Such a duty would impose an excessive and unrealistic burden on manufacturers. [Citations.] Perversely, such an expanded duty could also undermine consumer safety by inundating users with excessive warnings. 'To warn of all potential dangers would warn of nothing.' [Citation.]" (*Id*. at p. 363.)

To this general rule, the court recognized an exception: "Where the intended use of a product inevitably creates a hazardous situation, it is reasonable to expect the manufacturer to give warnings." (*O'Neil*, *supra*, 53 Cal.4th at p. 361.) For example, in *Tellez-Cordova v. Campbell-Hausfeld/Scott Fetzger Co*. (2004)

129 Cal.App.4th 577 (*Tellez-Cordova*), the plaintiff developed lung disease from breathing toxic substances released from metals he cut and sanded and from abrasive discs on the power tools he used. He sued the manufacturers of the tools, arguing they were "specifically designed" to be used with abrasive discs for grinding and sanding metals, and it was therefore reasonably foreseeable that toxic dust would be released into the air when the tools were used for their intended purpose. The defendants argued that California law imposed no duty on them to warn of hazards in the product of a third party. They noted that the tools themselves released no hazardous dust; the dust came from the abrasive discs attached to the tools and the metals they contacted. The appellate court rejected this defense. (*Id*. at p. 585.) In the words of *O'Neil*, "[r]ecognizing a duty to warn was appropriate in *Tellez-Cordova* because there the defendant's product was intended to be used with another product *for the very activity that created a hazardous situation*." (*O'Neil*, at p. 361.) Accordingly, *O'Neil* reaffirmed the principle that "a product manufacturer generally may not be held strictly liable for harm caused by another manufacturer's product. The only exceptions to this rule arise when the defendant bears some direct responsibility for the harm, either because the defendant's own product contributed substantially to the harm (see *Tellez-Cordova*, *supra*, 129 Cal.App.4th at p. 585), or because the defendant participated substantially in creating a harmful combined use of the products (see *DeLeon*, *supra*, 148 Cal.App.3d at p. 343)." (*O'Neil*, *supra*, at p. 362.) The court stated that "[t]he conclusion we reach here is most consistent with the policies the strict liability doctrine serves." (*Id*. at p. 363.) Moreover, "[t]he same policy considerations that militate against imposing strict liability in this situation apply with equal force in the context of negligence." (*O'Neil*, *supra*, at p. 366.)

9

Appellants first contend that *O'Neil* does not apply to the instant case. They argue that unlike the plaintiff in *O'Neil*, appellants have alleged that the grinder itself was "defective." Specifically, they claim that in the absence of kickback prevention, a user could be injured even when utilizing approved accessories. We disagree that this case falls outside the analysis set forth in *O'Neil*. Like the plaintiff in *O'Neil*, Sanchez sued one manufacturer for the harm caused by another manufacturer's product. And as in *O'Neil*, Sanchez's injuries arose when the product used with the defendant-manufacturer's product caused him harm: in *O'Neil*, it was the asbestos used to insulate the valves; here it was the saw blade Sanchez attached to the grinder. Thus, like *O'Neil*, this case requires us to resolve when "a product manufacturer . . . may . . . be held strictly liable for harm caused by another manufacturer's product." (*O'Neil*, *supra*, 53 Cal.4th at p. 362.)

Appellants' attempt to distinguish *O'Neil* on the ground that they have alleged respondents' grinder is "dangerous," even when used properly, is unavailing. Sanchez was not injured by any intended use of the grinder, and he may not predicate his claims on the speculative harm that might have befallen someone else, putting the grinder to its intended use. Imposing liability under the circumstances here would convert strict liability into "absolute liability" for product manufacturers. As *O'Neil* noted, "'[f]rom its inception, . . . strict liability has never been, and is not now, absolute liability. As has been repeatedly expressed, under strict liability the manufacturer does not thereby become the insurer of the safety of the product's user. [Citations.]' [Citation.]." (*O'Neil*, *supra*, 53 Cal.4th at p. 362, italics omitted ["We have not required manufacturers to warn about all foreseeable harms that might occur in the vicinity of their products."].)

10

Appellants next contend that if *O'Neil* applies, respondents are strictly liable, because the instant case falls within the exceptions recognized by the court. Specifically, they argue that respondents are liable for the injuries caused by the third-party manufacturer's saw blade because the grinder "contributed substantially to the harm, or [respondents] participated substantially in creating a harmful combined use of the products." (*O'Neil*, *supra*, 53 Cal.4th at p. 342.) We disagree.

Appellants allege the grinder contributed substantially to the accident because it was defectively designed. However, a product substantially contributes to the harm suffered by a plaintiff only where the intended use of that product inevitably resulted in the harm. (See *O'Neil*, *supra*, 53 Cal.4th. at p. 362, citing *Tellez-Cordova*, *supra*, 129 Cal.App.4th at p. 585.) In *Tellez-Cordova*, the power tools manufactured by the defendants were specifically designed to be used with abrasive discs. The combined use of the tools and discs resulted in the release of toxic dusts. (*O'Neil*, at p. 360.) The opposite is true here. Appellants' own expert opined that the grinder was *not* intended to be used with a saw blade, and the manual warned that use of a saw blade was "dangerous and may cause personal injury or property damage." Moreover, as *O'Neil* noted, "the power tools in *Tellez-Cordova* could *only* be used in a potentially injury-producing manner. Their sole purpose was to grind metals in a process that inevitably produced harmful dust." (*O'Neil*, at p. 361.) Here, in contrast, no evidence suggests that the grinder would inevitably cause personal injury when used as directed. Accordingly, the grinder did not contribute substantially to Sanchez's injury.[5]

---

[5] Appellants' suggestion that but for Sanchez's use of the grinder, he would not have been injured by the saw blade proves too much. Were that the test, the

11

Appellants contend that respondents participated substantially in creating a harmful combined use of the products, because they knew that consumers used saw blades with the Hitachi grinder and failed to take steps to reduce or prevent that misuse. *O'Neil*, however, stated that a product manufacturer participates substantially in creating a harmful combined use only if it specifically designs its product for the combined use. (*O'Neil*, *supra*, 53 Cal.4th at p. 362, citing *DeLeon*, *supra*, 148 Cal.App.3d at p. 343.) Unlike the manufacturer in *DeLeon*, no evidence shows that respondents specifically designed the grinder to be used in proximity to or in combination with saw blades.

Appellants suggest that respondents should have placed warnings on the body of the grinder or provided more specific warnings about the harm that might result from the use of the grinder with a saw blade. However, there is no duty to warn about the risks associated with another manufacturer's product, unless "the intended use of [the] product inevitably creates a hazardous situation." (*O'Neil*, *supra*, 53 Cal.4th at p. 361.) Sanchez's use of the grinder with a saw blade was concededly not an intended use of the grinder.

Appellants' reliance on *Tellez-Cordova*, *supra*, 129 Cal.App.4th 577, and *Wright v. Stang Manufacturing Co.* (1997) 54 Cal.App.4th 1218 (*Wright*), is misplaced. As discussed previously, it was appropriate to recognize a duty to warn in *Tellez-Cordova* because there, the defendant's product "was intended to be used with another product *for the very activity that created a hazardous situation*." (*O'Neil*, *supra*, 53 Cal.4th at p. 361.) Here, the grinder was not intended to be used with a saw blade.

---

defendants in *O'Neil* would have been liable, as but for *O'Neil*'s working on the ships' valves, he would not have been injured by their asbestos insulation.

In *Wright*, the plaintiff, a firefighter, was injured when a deck gun broke loose from its mounting assembly under high water pressure. (*Wright*, *supra*, 54 Cal.App.4th at p. 1222.) The deck gun was attached to a fire truck with riser pipes instead of a flange mounting system. The appellate court concluded that the deck gun manufacturer could be liable for failing to warn users about the danger that could result from "the potential dangerous and foreseeable 'mismatch' of the deck gun and riser pipe attachments which did not have adequate strength or design to withstand the water pressures generated by the use of the deck gun." (*Id.* at p. 1236.) *O'Neil* distinguished *Wright* on the ground that there, "the plaintiff was injured due to a failure of the entire deck gun assembly, of which the defendant's product was a component part. His injury was not traceable to a single product made by another manufacturer; it was allegedly caused by a foreseeable failure of the entire system to withstand high water pressure." (*O'Neil*, *supra*, 53 Cal.4th at p. 360.) The same distinction applies here: the grinder was not part of a single system that failed in the course of its intended use and caused Sanchez's injuries; nor was the grinder intended to be used with the saw blade in a combined system. Because respondents were under no duty to warn of the consequences of attaching to the grinder an accessory with which it was never intended to be used, the adequacy of the written warnings actually given does not create a triable issue of material fact.

Appellants also suggest that respondents should have designed the grinder to prevent its use with saw blades, or equipped it with a kickback prevention feature to reduce the harm caused by its misuse. However, "mere compatibility for use with [dangerous] components is not enough to render [the product] defective." (*O'Neil*, *supra*, 53 Cal.4th at p. 350.) In addition, for the same reasons that California law does not "require manufacturers to investigate the potential risks of

13

all other products and replacement parts that might foreseeably be used with their own product and warn about all of these risks," it would be "an excessive and unrealistic burden" on respondents to require them to design their grinder around an unintended combined use. (*Id*. at p. 363.) In short, respondents "were not strictly liable for [Sanchez's] injuries because (a) any design defect in *[respondents'] products* was not a legal cause of injury to [Sanchez], and (b) [respondents] had no duty to warn of risks arising from *other manufacturers'* products." (*Id*. at p. 348.) Moreover, as *O'Neil* noted, the same policy considerations that militate against imposing strict liability in this situation apply with equal force in the context of negligence. (*Id*. at p. 366.)

Appellants have not shown a triable issue of material fact as to whether respondents are liable for Sanchez's injury. Accordingly, we discern no error in the grant of summary judgment.

## DISPOSITION

The judgment is affirmed. Costs are awarded to respondents.


**CERTIFIED FOR PUBLICATION.**



MANELLA, J.


We concur:



WILLHITE, Acting P. J.                    SUZUKAWA, J.



14